314-089-8. In re to Commitment of Thomas Gauthier, people of the District of Illinois AFB, by Kathryn Dorsch, v. Thomas Gauthier, subsequent by J.C. Larson. Mr. Larson, good afternoon. May it please the Court. Good afternoon, Your Honors. Is it Lawson or Lawson? It's Lawson, Your Honor. Did I say it wrong? Everybody said Larson. Sorry. My name is J.C. Lawson, and along with Matthew Mueller, we represent the appellant in this matter, Thomas Gauthier. Mr. Gauthier was found to be a sexually violent person under the Sexually Violent Persons Commitment Act after a trial in Grundy County on November 10, 2014. There are two issues brought up on appeal that I'm going to be discussing today. The first issue is that the trial court failed to utilize the proper standard in determining that Mr. Gauthier was a sexually violent person. And number two, that Mr. Gauthier received ineffective assistance of counsel during the course of his trial. First, in order for the state to prove beyond a reasonable doubt that an individual should be involuntarily committed under the Sexually Violent Person Commitment Act, they must show three elements. Those elements are, first, that the person has been convicted of a qualifying offense. Number two, that that person has a mental disorder. And number three, that that person is deemed dangerous because of the mental disorder. That that person is substantially probable to engage in a future act of sexual violence. Substantially probable, and the third element is the element I'm going to focus on for purposes of this argument. Substantially probable has been held to mean much more likely than not. And the trial court in this manner failed to explicitly find that Mr. Gauthier was substantially probable of committing a sex offense in the future. In fact, the trial court made a written order following the trial in which they made a ruling. In that ruling, the trial court laid out the three elements as, one, the qualifying offense. Two, the mental disorder. And three, dangerous propensity. The court made the finding that all three experts in this trial found that Mr. Gauthier was substantially probable to re-offend. The trial court failed to explicitly state that the evidence proved beyond a reasonable doubt that Mr. Gauthier was substantially probable to engage in future acts of sexual violence. This is important. The state will argue that there is no other possibility that the trial court could have found except for the proper standard provided in the statute, based on the fact that in closing arguments the state properly defined the statute. However, this court actually recently provided an opinion in People v. Bailey. This case was not cited in our brief because it was published recently in the last couple weeks. However, I find it to be extremely relevant to the issue at hand in that People v. Bailey dealt specifically with the element of a defendant needing to be proved that there's a substantial probability that that defendant will engage in future acts of sexual violence, if not confined. That case dealt with the Sexually Dangerous Persons Act. It is a different act than what we're dealing with here with Mr. Gauthier. However, I still believe the analysis is extremely important. In that case, I might have been on that panel, I can't remember, but wasn't there a statutory requirement, a specific thing that the court needed to find to make that specific finding? Yes, Judge. The ruling in that matter was that there was a Masterson case, a Supreme Court case dealing with the Sexually Dangerous Persons Act, and under that Supreme Court case, the court ruled that there needed to be an explicit finding to whether a person is substantially probable to engage in future acts of sexual violence. And in the SVP Act, which we're hearing under, right, does the statute have the same language? As it refers to the elements that need to be proved, the elements are substantially similar. The difference is that the Sexually Dangerous Persons Act, under the first requirement, you only have to be charged with an offense. The Sexually Violent Persons Act is actually a stricter statute, which makes it so that there has to be a conviction for a qualifying offense. When you look at the third element, they're substantially the same. And actually, in a reading of the Masterson case, the Supreme Court opinion, they actually looked to the Sexually Violent Persons Act to determine and clear up the ambiguities that had originally been in that act. And that's where they came to the standard, to applying a certain standard, the substantial probability, and making it explicit so that that can be included in the court's ruling before someone's civilly committed for an indeterminate amount of time. Moving back to this People v. Bailey case, it was a substantially similar fact pattern that we're dealing with now. The court failed to make the explicit finding. This court cited that in order for it to be explicit, it has to be able to be plainly read without requiring this court to try to determine the intentions of the court. That's what's happened here. The court took the time in Mr. Gothier's case at the end of the trial to draft an opinion, a ruling, that was 15 pages long. Fifteen pages that went through the analysis, the expert testimony, and then ended with a ruling and discussion. Nowhere in that 15-page written order did it make a finding that Mr. Gothier was substantially probable to engage in future acts of sexual violence. Instead, it's just the general standard referred to by the court as substantially probable to re-offend. There is several instances of evidence that show that Mr. Gothier has committed crimes in his past. There's no context to that. But however, I believe it's important to make the court make that strict finding that he was going to engage in future acts of sexual violence, because the statute put the standard in there to make it a strict standard before you commit a crime. You can't commit someone for an indeterminate amount of time under the statute. The purpose of the substantially probable language was to conform to the United States Supreme Court's Kansas decisions, saying that that finding had to be made. Correct, correct, Judge, and that would be U.S. Hendricks, I believe, Kansas and Hendricks. And when was that case decided? Judge, I don't know the date for sure. I want to say it was 1999, potentially, though. Did you cite that in your brief? I did not, Judge. Did you cite any case in support of this proposition in your brief? Judge, I don't believe any cases were cited particular to this proposition, except for the fact that there is a requirement that the court file the strict limits. It's inherent in the statute. The statute was cited. The standard is inherent and listed directly in the statute as a substantially probable standard, and that's what we argued in our brief. The only reference to Mr. Gauthier being at a risk to reoffend sexually actually came from Dr. Ostroff. Dr. Ostroff was Mr. Gauthier's expert witness at trial, and the only statement he made was that Mr. Gauthier was at high risk to reoffend sexually. Again, this brings me back to the strict standard that's put into the statute, requiring that there be the strict finding that much more likely than not. The problem with finding it based on a high risk is that high risk is an ambiguous and vague term. Well, so it's substantially probable, is it? No, Judge, because the courts rule that it's much more likely than not, and that certainly means much more likely than 50%. In order to find that standard, you have to meet the substantial probable baseline. For those reasons and for the court's failure to make the explicit finding, we are asking that the remedy be that the trial order be vacated and remanded for a new trial so that those determinations can be made. Moving along to the second issue, there was an issue where Mr. Gauthier received ineffective assistance, except for a portion of the trial. There are three instances raised in the brief where Mr. Gauthier received ineffective assistance, and those were, first, that the trial counsel did not cross-examine the state's expert witnesses as to their evaluations and testimony. The second was that the trial counsel did not object to the foundation of the expert's testimony. And lastly, was that trial counsel did not object to the fact that the trial counsel failed to provide evidence at the disposition hearing in favor of conditional release. Again, I'm going to focus on the first occurrence, for time's sake, regarding the fact that trial counsel did not cross-examine the state's expert witnesses. In order for this court to find that there's ineffective assistance at counsel, it has to be found that trial counsel's performance fell below the reasonable objective standard of reasonableness, and that if not for that, the trial counsel would not have been able to provide evidence at the disposal hearing. And if not for that performance, there was a reasonable probability that the outcome of trial would have been different. I believe we're able to show that here. The state only provided expert witnesses, two of them, in the trial. The entirety of the state's case relied on these two expert witnesses. Trial counsel did not cross-examine these witnesses as to the inaccurate information which is apparent on the face of the record. Obviously, in an appeal, we are restricted to only viewing that record. However, on that record, there is issues with the static 99R test. This ties back into my previous argument. The static 99R test is the test relied upon by experts to then give their opinion to the court on whether or not there's a likelihood of recidivism from the subject. These static 99R tests take information from a person's past, they assess points based on different criteria, and then based on that criteria, they assess a value to the subject and then compare it against other sex offenders. On the face of the record, there are discrepancies in inaccurate information in the static 99R test. There is an incident where a point was assessed to Mr. Gauthier based on his age, even though he had gotten past the point in his age bracket to not be assessed the point. There's another instance where Mr. Gauthier is given a point for non-sexual violent crime, even though there's no record of a non-sexual violent crime in his past. These points add up. The state's going to argue that he had no record of non-sexual violent crime. He had a conviction for a sexual crime. How many convictions? He had several convictions. We're not contesting his lengthy criminal history. However, as your Honor suggested, one of them, there was theft, criminal trespass to state land. These are not violent crimes. The standard was non-sexual violent crimes. He should not have been assessed a point under those standards. And do you really think that if those hadn't come in, if he said, okay, you can't consider that, that would have changed the outcome for your client here? Judge, I do. Because the protection put in place here is cross-examination for my client. The cross-examination attacks not just the mistakes we found on the face of the record. They lead to additional mistakes. And not only to the mistakes in the actual area of the record, but they lead to additional mistakes. So, the ineffective assistant counsel is that when there's a possibility to impeach the only state's evidence, it needs to be taken advantage of. Well, weren't the convictions evidence? The convictions were evidence, Judge. Okay. Whether the expert testified or not, the state put in the convictions. So, those are some other evidence. Those are absolutely some other evidence. That he was convicted when he was 12 for molesting two of his sisters, his little brother. Then when he was, I guess, six years later when he was 18, a 12-year-old girl. And in 2000, I guess, when he was only about 21, a 15-year-old girl. Sure. And that's true, Your Honor. Again, we're not contesting the criminal history of our client. What we're contesting is that the additional information that was dealt with in forming the opinion of these experts was an attack. There was misinformation. Those alone standing on their face was not the basis to which the experts were assessing points against my client to come up with a decision. I'm sorry, Your Honor? I don't think the correct point number should have been. Well, just based on the face alone of the record, meaning one was a 6 and one was a 7. And the state's going to argue that this is irrelevant because no matter what score, it's going to be a high risk. But our argument lends itself back to the Ineffective Assistance Council that that's just on the face. The experts were not cross-examined. The credibility was not called into question. But even with your number system, he's... Well, Your Honor, there may have been more misinformation and inaccurate statements made and accounted for in this document, but we're only able to read what was listed on this actuarial sheet. And that's the point of the Ineffective Assistance Council. His points were in the teens. No, Your Honor, I believe they were 8 and 9 is where we were based on the two experts. Under the static 99R, it was an 8 and a 9. Whose burden is it to establish ineffective assistance? It's the appellant's burden, Judge. And so if you cross-examine him about it, do you think the expert's going to break down and say, you got me, he's safe, let him go? I mean, I was wrong. No, Your Honor. But every question posed to an expert witness and every mistake made from the expert witness, it starts to break down the court's going to rely on that opinion. So in brief conclusion, based on the issues presented and the issues in our brief, we're asking that this court vacate the trial court's order and remand for a new trial. Thank you. Thank you, counsel. I'm Assistant Attorney General Katherine Dorsh on behalf of the people. As my opponent noted, to establish that Respondent is an SVP, the state had to prove three elements. Conviction of a sexually violent offense, that he has a mental disorder, and that he's substantially dangerous and that his mental disorder creates a substantial probability that he will commit future acts of sexual violence. And here, in this case, the state's experts, Dr. Baloo-Smith and Dr. Weidel, both diagnosed Respondent with sexual violence. Others specified paraphilic disorder and antisocial personality disorder. Respondent's expert, Dr. Ostroff, agreed as to the antisocial personality disorder, but he was uncertain regarding the paraphilia. He said he couldn't rule it out and he couldn't rule it in either, because he wasn't sure whether Respondent was committing his crimes, his sexual offenses, as a result of paraphilic urges, or just because of general criminality. He scored as a psychopath on the hair psychopathic, I can't remember, but it's something like that. It's PCLR, I'm sorry, I can't remember the initial standard, but generally he tests high for psychopathy. And everybody agreed, of course, that he'd been convicted of the previous offenses, the sexually violent offenses, and the experts all agreed that Respondent was substantially probable to commit future acts of sexual violence. The only question was Dr. Ostroff's question about the motivation. The state's expert said no, it's motivated by his paraphilic urges, his sexual offenses are, and Dr. Ostroff said no. So Respondent's counsel took that information, and for his theory of the case, he argued that the court should find, this was a bench trial, he argued that the court should find that Respondent may be a criminal, he may be a recidivist, but he's not appropriate for commitment because his crimes are motivated by his paraphilia. Of course, the trial judge rejected that proposition and found that Respondent was a sexually violent person and committed him to secure care, and Respondent has argued, first, that the court applied the wrong standard. I submit the record simply cannot support that conclusion. The record makes plain that the parties, the entire argument, as I set it up here for you today, the entire argument between the parties was yes, he's prone to general recidivism, everybody agrees to that, and he is prone to sexual violence, they all agree that he's prone to commit, substantially probable to commit future acts of sexual violence. Everybody was clear on the standard, the only question was Dr. Ostroff's opinion, what motivated his sexual offenses. As to the Masterson issue, Respondent's counsel did not cite Masterson or any other case in their brief that cited Masterson, and so I submit that this court to find that issue forfeited under Illinois Supreme Court Rule 341H7, but I can tell you that he's incorrect about Masterson. Masterson is an SDP case, which is a slightly different procedure, wherein someone is charged with a criminal offense and then the prosecutor can file a petition within that case and seek commitment in lieu of conviction, so it's different procedurally. The problem with Masterson was that while the SBP Act had the substantially probable language built in it, the SDP Act is much older, I believe it dates from 1938, it had a different name, and anyway, it did not have the appropriate standard, it did not have the substantially violent standard. So what the Supreme Court said in Masterson, I believe it was 03, they said, well we're going to graft the SBP standard, the substantially probable standard, onto the SDP Act, so it's constitutional, and we're going to require a specific finding in SDP cases, so we know that the court has complied with this, because it's not statutory, it's not in the statute, so we want to know that courts have complied with our holding here in Masterson. We're going to demand that they find a specific finding in their order, but there's no such rule applicable in SDP cases, and no court has ever found that Masterson applies to SBP cases. And part of the reason for that is in SBP cases there's already been convictions. I'm sorry, and part of the reason is in SBP cases there's already been criminal convictions, right? Pardon me? In an SBP case there has already been criminal convictions. There has to be, what the experts call an index offense, there has to be a conviction of a sexually violent offense, and they're specifically enumerated in the act. Right, but SDP is treatment in lieu of conviction. But the conviction itself is not sufficient. The conviction itself is not sufficient to satisfy the standard under the SBP for a commitment. The convictions have to have current mental disorder. Some of these convictions, some of these respondents have been in prison or incarcerated for a great length of time and know it must be a current mental disorder. And you have to prove that it renders him dangerous, and that it predisposes him to commit future acts of sexual violence. It's not based on past behavior, but the past conviction is simply a narrowing mechanism to make sure that we're narrowing the applicability of this commitment statute to a certain population. They've already proven their propensity and that they already have the sexually violent offense conviction. But there still, in a commitment proceeding, has to be a finding that he's substantially probable to reoffend. That's part of the three-pronged test. Yes, that's absolutely correct. And all three experts here did testify that the respondent was substantially probable to commit future acts of sexual violence. And the court did not make that finding? I don't find a specific finding. The court certainly found that he was an SBP. But again, nothing in Masterson. Masterson requires that specific written finding. No court applies Masterson to written orders in SBP cases. But the statute requires it. The statute requires the finding, but does not require it written. Masterson requires it in the written order. That is what I understand the respondent to be arguing. Not that there has to be a specific finding written in the order. As I explained, the reason for that finding in Masterson is because the language, the substantially probable language, wasn't in the statute. So they had to make sure that they were applying this common law requirement. Did the court make an oral finding in this case? He was substantially probable to commit future acts of sexual violence. I would have to go back and check the record, Your Honor. I would have to go back. I could not say for certain exactly what he said. But again, the whole point was, when you look at the judge's colloquy as he's talking about this at the end of the trial, he says, okay, everybody agrees he's substantially probable to commit future acts of sexual violence. Everybody agrees he's got the prior conviction. But what we're trying to figure out is the respondent's counsel's point. Is he doing this because he's a psychopath? Or is he doing it because he's got a paraphilic urge that makes him commit these sexual offenses? So really, it had been narrowed down to that point. That was the defense point. Well, the one doctor said that the psychopathy score, I think, was 31 or something like that. I'm sorry? The psychopath score was 31 on the hair factors. Just that alone, they thought, would likely reoffend sexually. It's just one measure that they look at. The actuarial tests are sort of where the experts begin. They start with this adjusted actuarial approach. They begin with the actuarials. Here they all use the static 99R. And they look at other information. One thing they look at that increases one's risk of offense is an antisocial personality disorder, or if they score high on the psychopath test. And the other score, the static 99 was what, 8 or 9? 8 or 9 on the static 99R test score? The static 99 score, his response counsel says that he should have impeached the experts about the static 99 score. I have several points to say about that. First of all, he did impeach counsel. Counsel did impeach the experts about the scoring in general. But it really wasn't consistent with his theory, right? Because his theory of the case is that his sexual offenses are not motivated by new paraphilia. So it's really sort of inconsistent. It's not necessarily consistent with his theory of the case to go through and impeach them point by point, item by item on the static 99, all 10 items. And there are admittedly inconsistencies in those items. But I submit to your honor, it's because the respondent himself has given inconsistent answers. The experts testified that the respondent will tell one person one thing and one thing the next. He said, he's told various people that he does drink alcohol, other people that he doesn't drink alcohol. He told one of the state's evaluators that he had lived with a woman for two years. And the other state's evaluator, he told no, he'd just been dating her on and off most of the time he was in custody. Those are just some of the examples that I can get off the top of my head as we sit here and speak. So some of this stuff is just based on his inconsistent self-reporting. We're not saying it's irrelevant. I know my opponents out of the state says it's irrelevant. We're not saying it's irrelevant. We're just saying that he did impeach, counsel's not deficient for not measure when it was only part of the expert's risk assessment. It's just a baseline where they start and then they consider additional risk factors and other factors that might reduce one's risk to re-advance. None of them applied here such as treatment or age or the third one is escaping me at the moment. But it's just one it's just a baseline point, baseline starting point. And most significantly of all, his own expert gave him a 7 on that same test. And so 7, 8, 9, they all fall in the high risk category. If in fact this inconsistency is applied to the state's experts and likely also applied to respond to his own expert report. Because they're based many times on his own reporting, his own self-report. Especially the, I believe it's the item about whether you've lived with a lover for two years or more, whichever item that is, number 4. That's based entirely on self-report and what it tells them is what they can score. So ultimately there's really no prejudice here because everybody agreed he's sexually violent and that he's, no they don't agree he's sexually violent, they agree that he's substantially probable to commit future acts of sexual violence. The only question as I said was whether that was motivated by paraphilia or just general criminality. How much longer do you guys have? You have two minutes. Okay. I believe that covers everything that I wanted to say about those points. Are there any further questions? Alright, well then for the reasons I mentioned here today and those in our brief, we'd ask you to affirm the circuit board's judgment. Thank you, Ms. Grove. Mr. Lawson, any rebuttal? Just a brief rebuttal, Your Honor. First, counsel stated that in regards to the standard of substantially probable to reoffend sexually, that everyone was clear on the standard and so it should be assumed that the trial court was applying the proper standard. This is a proceeding in which the state is required to prove beyond a reasonable doubt certain elements so that a person can be civilly committed against involuntarily for an indeterminate amount of time. I think that based on the circumstances under the statute and the inherent nature of that third element, that there needs to be the strict finding that this individual is going to engage in future acts of sexual violence. On this trial, judge, find that your client was not substantially likely to reoffend. What evidence would support that? Judge, in response to that, it's not the respondent's burden to do so. But your own, I mean, his own expert says, well, the guy's a psychopath. Again, we agree that the expert might have stated that and he stated that he was at a high risk to reoffend, but there was never any testimony provided that there is a substantial probability that he's going to engage in future acts of sexual violence. Whether this individual is determined to have a high chance or substantial probability of reoffending criminally, that's not the issue at hand. Whether this individual continues to commit crimes of trespass and theft once he's released, that's not the issue. The issue is whether he's substantially probable to engage in acts of sexual violence. This individual, the last incident was in 2000. So he committed crimes after that point, but they weren't sexual crimes. Moving along to another point. He was incarcerated for periods of that time, but he was also released during periods of that time as well. Moving on to the issue of the fact that whether it was a 6, a 7, an 8, or a 9, it doesn't matter, the state says, because he's a high risk regardless. I find this a little troubling because this, again, is a situation where we're trying to involuntarily commit someone for an indeterminate amount of time, and the state's saying, well, whether it's 6, 7, 8, it's close enough. It's close enough. It's close enough that everyone understood at trial that the trial court didn't make the explicit finding. It's close enough that some of the information was off because it was still close enough to go ahead and commit this individual to involuntary commitment. There's a reason why the statute has strict elements in place. And there's a reason why it's to be proved beyond reasonable doubt, the strictest standard we have. And it's because it's an extreme remedy that we're pursuing here. And close enough just does not cut it. And that's why we're asking to have the order vacated and remanded for a new trial. Any other questions? Thank you very much. Thank you, Mr. Larson. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a panel change.